## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN EUGENE SANDIFER,    )
    )
        Petitioner,    )
    )
v.    )    Case No. 04-3412-WEB
    )
RAY ROBERTS    )
El Dorado Correction Facility    )
    &    )
PHIL KLINE    )
Kansas Attorney General,    )
    )
        Respondents.    )

### MEMORANDUM AND ORDER

Pursuant to 28 U.S.C. § 2254, petitioner John Sandifer seeks relief from his Kansas state conviction. Petitioner argues his conviction is unconstitutional because of: ineffective assistance of counsel, violations of his right to present a defense, and right to due process.

### I.  Facts

On April 30, 1999, authorities discovered the body of John Comstock in Wyandotte County, Kansas. Police found Comstock's body with the throat slashed and without money.

Police investigators arranged a meeting with Petitioner because he was the last person seen with the victim. The police contacted Petitioner and offered to meet him at his house to talk but Petitioner offered to meet the detectives at his mother's house. (R. Vol. IV at 230); (R. Vol. V at 134). He drove to his mother's house in a timely manner and met police. (R. Vol. III at 11, 16); (R. Vol. V at 136-138). Once they met, the police suggested and Petitioner agreed to go to the police station to give a statement. (R. Vol. V at 20-21); (R. Vol. IV at 231). The police took their vehicle

and Sandifer drove separately in his pick-up truck.  (R. Vol. III at 12); (R. Vol. IV at 231-232).

Petitioner stated he was trying to cooperate with the police in any way he could.  (R. Vol. V at 138-

139).  The detectives and Sandifer entered the police station through a door requiring a code to gain

entrance.  (R. Vol. VII at 23).  The police asked for and received a written consent to allow the

search of Petitioner's vehicle.  (R. Vol. V. at 22-23).  The consent form had language informing

Petitioner that he had a right to refuse.  (Id.).  It was only after evidence was found as a result of the

search, that Petitioner was placed under arrest and given his Miranda warnings.  (R. Vol. V at 26,

27); (R. Vol. III at 17-20).  The police spoke with Petitioner for 15 minutes prior to discovering the

blood in the vehicle.  (R. Vol. III at 37).  The entire detention and interview lasted around 3-4 hours.

(R. Vol. V at 142).

  During the interview, Petitioner described the events leading up to the murder.  The evening

of the murder, Comstock was with Petitioner at a friend's house.  They both left the house after

about 10 minutes.  Petitioner got into the driver's side of his truck, while Comstock sat in the

passenger's seat.  Comstock had received a $500 check, which he had cashed on the same evening

of the murder. While driving the truck, Petitioner had asked Comstock for money to buy crack but

Comstock refused.  (R. Vol. V. at 30-32).  Fighting ensued inside the truck.  (Id. at 37).  Petitioner

stopped the truck and both exited the vehicle.  (Id.).  Petitioner removed a box knife from his pocket

and slashed Comstock's throat.  (R. Vol. III at 23-24).  Petitioner reached in the front pocket of the

victim to take his money.  (R. Vol. V at 40).  Police also testified that one of the victim's front

pockets was turned inside out.  (R. Vol. IV at 177); (R. Vol. V at 40, 44-45).  Petitioner used this

money to purchase crack, which he smoked when he returned home.  (Id. at 129, 131).  The next

morning he went to work but over lunch he purchased more crack and smoked it.  (Id. at 133).

At trial, Petitioner claimed his actions were self-defense.  Petitioner claimed Comstock began choking him the life out of him in the truck because he would not stop at the liquor store; however, there were no marks or bruises to substantiate this.  (R. Vol. VI at 27).  Petitioner attempted to characterize the victim as having a propensity to start fights and arguments when intoxicated.  (R. Vol. V at 197).  However, there was testimony that the victim was elderly, frail, messed up, sick with cancer, dying with a bad liver, not strong for his age, and unable to get around real good.  (R. Vol. IV at 47-48, 49).  Furthermore, the pathologist testified the victim's throat was cut around half of the circumference of the neck which was not consistent with the slashing motions described by Petitioner in his self-defense story.  (Id. at 87-88); (R. Vol. V. at 115-116, 121, 124).

## II.  Procedural History.

On October 1, 1999 a jury convicted Petitioner of one count of first degree felony murder and one count of aggravated robbery.  (R. Vol. II at 70, 71).  On November 10, 1999 the Wyandotte County District Court sentenced Petitioner to a term of life imprisonment for the murder conviction and a consecutive term of 51 months imprisonment for the aggravated robbery conviction.  (R. Vol VI at 39).  Petitioner argued on direct appeal that the trial court erred by failing to provide instructions for lesser included offenses.  The Kansas Supreme Court (KSC) rejected these arguments and affirmed Petitioner's convictions.  *State v. Sandifer*, 270 Kan. 591, 17 P.3d 921 (2001).

Petitioner next filed a state collateral appeal and argued his conviction should be reversed due to ineffective assistance of counsel and police misconduct.  The Kansas Court of Appeals (KCA) affirmed the trial court's denial of these claims and the KSC denied review on September 14, 2004.

-3-

*Sandifer v. State*, 88 P.3d 807, 2004 WL 944021 (No. 89, 729) (Kan. Ct. App. Apr. 30, 2004) (unpublished opinion).

### III.  Exhaustion.

Prior to ruling on the merits of Petitioner's claims, the Court must first determine if they have been exhausted at the state court level.  "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); 28 U.S.C. § 2254.  In the case *sub judice*, Petitioner makes one argument that was not first presented to the state courts.  Petitioner claims a due process violation from the use of "dubbed tapes" from Petitioner's interview with police.  Petitioner argues this was presented to the KCA; however, the record shows otherwise.  *Sandifer*, 2004 WL 944021 at 3; (R. Vol. I at 2).

"[T]he Supreme Court has held that if a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief."  *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

For this Court to hear Petitioner's new claim, he would have to present it first to Kansas courts; however, they would find this claim untimely.  The state statute governing collateral motions states:

> (1) Any action under this section must be brought within one year of: (i) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (ii) the denial of a petition for writ of certiorari to the United States Supreme Court or issuance of such court's final order following granting

such petition.

(2) The time limitation herein may be extended by the court only to prevent manifest injustice.

Kan. Stat. Ann. 60-1507(f).

The KSC denied Petitioner's direct appeal in 2001; however, the above statute was enacted on July 1, 2003.  Kansas courts have held that petitioners have one year from the date 60-1507(f) was enacted, to raise preexisting claims in a collateral proceeding.  *Hayes v. State,* 34 Kan. App. 2d 157, 158, 115 P.3d 162 (2005).  More than one year has elapsed since 60-1507(f) was enacted; consequently, Petitioner's remedy under section 60-1507 is unavailable and this preexisting claim is procedurally defaulted.  See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  The Court may not consider procedurally barred claims if the bar rests upon an independent and adequate procedural ground.  *Thomas*, 218 F.3d at 1221.

"A procedural rule is independent if it is based upon state law, rather than federal law.  To be adequate, a state's procedural rule used to bar consideration of a claim must have been firmly established and regularly followed by the time as of which it is to be applied."  *Anderson v. AG*, 342 F.3d 1140, 1143 (10th Cir. 2003) (internal quotations and citations omitted).

The period of limitations in Kan. Stat. Ann. 60-1507(f) is a state law so it qualifies as independent.  This law is firmly established as the Kansas legislature amended the statute in 2003 to add time limitations and the KCA has applied it to bar untimely collateral appeals.  *Hayes,* 34 Kan. App. 2d at158.  Because the state procedural bar is independent and adequate, the Court may not consider Petitioner's new claim unless he can demonstrate cause and prejudice or a fundamental miscarriage of justice.  *Thomas*, 218 F.3d at 1221.

The Court does not find a miscarriage of justice as Petitioner does not provide any facts that

would show actual innocence.  See *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).  Petitioner also fails to show cause for the default as he provides no explanation for failing to present this claim in state court.  This claim is exhausted and procedurally defaulted; consequently, the Court will not address the merits.

## IV.  Standard of Review.

The Court's standard of review is set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "circumscribes a federal habeas court's review of a state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 155 L. Ed.2d 144, 154 (2003).  Where a state court has adjudicated a claim on the merits, the Court may not grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involves an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "the only question that matters," is "whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 155 L. Ed. 2d at 155.  In other words, if § 2254(d)(1) applies, the Court need not conduct a de novo review of the state court decision.  *Id.*

Clearly established Federal law means, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Id.*  Determining what the Supreme Court has clearly established is usually "straightforward."  *Id.*  First, a state court's

decision is contrary to such law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed.2d 914, 926 (2002). Second, the state court's application of clearly established Federal law is unreasonable "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The application must be unreasonable, not just incorrect. *Id.* "Avoiding these pitfalls does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Patton v. Mullin*, 435 F.3d 788, 794 (10th Cir. 2005) (citing *Early v. Packer,* 537 U.S. 3, 8 (2002)).

Section 2254(e)(1) requires this Court to presume the state court's factual determinations are correct; furthermore, the prisoner bears the burden to rebut the presumption by clear and convincing evidence. § 2254(e)(1). The Court does not stand to correct errors of state law and is bound by a state court's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

## V.  Ineffective Assistance of Counsel.

Petitioner argues his counsel was unconstitutionally ineffective because: 1) counsel did not file a motion to suppress evidence from Petitioner's illegal arrest; 2) counsel did not properly challenge the admission of statements obtained in violation of the Miranda warnings; 3) counsel failed to introduce evidence showing Petitioner's statements were involuntary; 4) counsel did not pursue a defense showing Petitioner lacked the mens rea for the crimes; 5) counsel failed to object to improper character testimony; 6) counsel failed to adequately prepare for trial; 7) counsel did not

object to prosecutorial misconduct; and 8) appellate counsel did not challenge the sufficiency of the evidence on direct appeal.

Using Kansas state law, the KCA denied these claims. *Sandifer v. State*, No. 87, 729 at 1-6 (citing *State v. Brown,* 266 Kan. 563, 577, 973 P.2d 773 (1999)). This law is at least as favorable as the familiar *Strickland* standard under Federal law. *Strickland v. Washington,* 466 U.S. 668 (1984).

To establish a claim of ineffective assistance of counsel, Petitioner must show his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his case. *Strickland*, 466 U.S. at 687-688. To establish prejudice, Petitioner must show there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Id.* at 694.

A. Petitioner's illegal arrest and his pre-Miranda statements.

(1). Petitioner claims he was unconstitutionally detained because the police did not conduct the interview at his mother's house, he was placed in a locked interrogation room, and prevented from leaving.

"A consensual encounter is the voluntary cooperation of a private citizen in response to a non-coercive questioning by a law enforcement officer." *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick,* 201 U.S. 429, 434 (1991) (internal quotations and citations omitted).[1]

---

[1] The KCA used similar state law in its analysis.

-8-

The facts do not show Petitioner was unconstitutionally detained.  Indeed, Petitioner was not placed in the police car; rather, he drove himself to the police station.  While a code was necessary for entrance into the building, there are no facts showing the interview room was locked or that Petitioner was prevented from leaving at any time.  Petitioner was not questioned for an excessive amount of time before his actual arrest and stated he wanted to cooperate with police.  *United States v. Hbaiu*, 202 F. Supp. 2d 1177, 1186 (D. Kan. 2002) (internal quotations omitted) ("prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave").  Furthermore, Petitioner was informed of his right to refuse to consent to a search of his vehicle.  A reasonable person would have felt free to disregard the detective's request to meet at the station, give a statement, and cooperate with police at the station.  Prior to the discovery of blood in Sandifer's vehicle, the encounter was consensual and his Fourth Amendment rights were not violated.

(2).  Petitioner next argues his counsel was ineffective for failing to object to statements made before he was given his Miranda warnings.  Petitioner claims he was in custodial interrogation upon arrival at the police station; consequently, anything he said before his Miranda warnings at the station was inadmissible.

To implicate the Miranda right to counsel, both a custodial situation and official interrogation are required.  *United States v. Bautista*, 145 F.3d 1140, 1147 (10th Cir. 1998).  "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).[2]

---

[2] The KCA used similar state law in its analysis.

-9-

As discussed earlier, Petitioner was not in custody as his encounter with the police prior to the discovery of blood in the vehicle was voluntary and his freedom of action was not restricted in any significant way.  As a result, the questioning of Petitioner prior to the discovery of blood in the vehicle, without issuing Miranda warnings, did not violate his Fifth Amendment rights.

Because there was no constitutional violation, counsel was not unconstitutionally ineffective for not moving to suppress evidence gained from the consensual interview or objecting to pre-Miranda statements.  The state court came to the same conclusions; consequently, the Court must deny these claims.

B.  Voluntariness of Statements.

Petitioner claims his statements were not voluntary because he was under the influence of crack and he has symptoms consistent with Attention Deficit Hyperactive Disorder (ADHD). Petitioner argues he is entitled to relief because his counsel failed to get an expert to testify on the effects of crack use and to introduce evidence of Petitioner's ADHD.[3]

Petitioner provides a medical record showing he has difficulty with memory, attention, and concentration.  (R. Vol. II at 33-34).  The report showed this was consistent with ADHD but further tests were needed.  (Id.).  Petitioner provides no information showing how an expert on the effects of crack use would have testified.

"A defendant's confession is involuntary if the government's conduct causes the defendant's

_____

[3] As the KCA noted, Petitioner does not argue he was incompetent to stand trial under Kan. Stat. Ann. 22-3301 and 3302.  While he styles his argument as a failure to request a competency hearing, the crux of his claim is that his counsel should have raised his medical problems at a hearing to determine if his statements to police were voluntary.  See (R. Vol. I at 13).

-10-

will to be overborne and his capacity for self-determination critically impaired." *United States v. McCullah,* 76 F.3d 1087, 1101 (10th Cir. 1996) (internal citations omitted).  "In determining whether the defendant's will was overborne in a particular case, the court examines the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." *Id.*  "Such factors include (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *U.S. v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006); see *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973).[4]  "While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

Petitioner's mental ability was not so impaired that he was unable to freely and intelligently converse with police.  At the time of the interview, Sandifer was an adult in his thirties, had a GED, and was a head maintenance man at an apartment complex.  (R. Vol. V. at 86, 146).  After having smoked crack, Petitioner was able to work, drive, and punctually meet police.  During conversations with police Petitioner did not appear to be under the influence of narcotics as he understood the questions, was articulate, coherent, and aware of what was going on.  (R. Vol. III at 14-16, 34); (R. Vol. V at 28-29).  When asked at trial why he gave a false confession to police, Sandifer stated he was tired, broken-hearted, and nervous; however, he did not claim it was the result of crack use or

---

[4] The state court relied exclusively on Petitioner's mental ability; however, when applying the deferential standards of section 2254, the Court focuses on the result of the state court's decision, not its reasoning.  See *Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004).

ADHD.  (R. Vol. V at 191).

Nor is there evidence the police exploited Petitioner's state of mind through overbearing interrogation techniques.  The detention and interview were not excessive and Sandifer was advised of and acknowledged his constitutional rights as listed in the Miranda warnings.  There is no evidence that Petitioner was subject to any threats or physical punishment.  Conversely, Petitioner volunteered to meet police first at his mother's house and then at the police station and he drove both times.  Petitioner gave consent to search the truck because he wanted to cooperate in any way he could.

Petitioner claims the police enticed him to confess by helping him create his false confession, sympathizing with him, and refusing to let him tell his side of the story.  (Id. at 148-149, 180-181).  Sandifer claims police told him if he confessed, they would tell the prosecutor and help him.  (R. Vol. I at 11).  Even accepting these allegations as true, they are insufficient to show a coercive environment sufficient to render Petitioner's statements involuntary.  *Miller v. Fenton*, 796 F.2d 598, 609 (3d Cir. 1986) (police officer's words of comfort and sympathy are insufficient to make a defendant's confession involuntary); *United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994) (when a government agent tells defendant his cooperation will be made known to prosecutors, this limited assurance does not render subsequent statements involuntary).

There is insufficient evidence to show either government coercion or an impaired mental ability; therefore, Petitioner's statements were voluntary.  *United States v. Short*, 947 F.2d 1445, 1450 (10th Cir. 1991) (defendant's ingestion of pain pills did not cloud ability to think and converse with police and his statement was voluntary); see *Elliott v. Williams*, 248 F.3d 1205, 1212 (10th Cir. 2001) (statements held to be voluntarily despite ingestion of heroin); see *United States v. Sims*, 428

-12-

F.3d 945, 953 (10th Cir. 2005) (no requirement for perfect mental ability for statement to be voluntary).

To satisfy *Strickland*, Petitioner needs to show prejudice.  In the case of the expert on the effects of crack usage, Petitioner provides no evidence showing the substance of this testimony.  Without such information, Petitioner cannot show how an expert witness would have changed the outcome of the trial or the voluntary nature of his statements.  Second, even if counsel had raised evidence of Petitioner's ADHD-like symptoms, it would have neither made Petitioner's statements involuntary nor would it have changed the outcome of the trial because there was ample evidence showing his statements were voluntary.  Because Petitioner cannot show any prejudice, these ineffective assistance claims must fail.  *Strickland,* 466 U.S. at 695.  The KCA's decision is consistent with this outcome; consequently, it was not an unreasonable application of federal law.


C.  Evidence Negating the Mens Rea.

Petitioner next argues his counsel was ineffective because he did not present evidence that negated the mens rea element of the crimes.  Petitioner's argument is without merit.

"Strategic or tactical decisions on the part of counsel are presumed correct unless they were completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."  *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001).

Counsel is not ineffective because he chose to pursue a defense based on self-defense.  It was reasonable to believe a self-defense strategy would bear more fruit than claiming Sandifer did not have the mens rea due to difficulties with concentrating, remaining attentive, remembering, and ADHD.  *Cf. McLuckie v. Abbott*, 337 F.3d 1193, 1199 (10th Cir. 2003) (counsel ineffective for

-13-

failing to investigate and present a mental health defense where there was significant evidence the defendant lacked the requisite mens rea).  Indeed, the decision to pursue a theory of self-defense was more reasonable given Petitioner's version of events.  While Petitioner's story did not persuade the jury, his counsel is not ineffective because the strategy was unsuccessful.  The KCA came to the same conclusion using a similar analysis; consequently, the Court can offer Petitioner no relief on this claim.

D. Character evidence.

Petitioner next argues his counsel was ineffective for failing to object to improper character evidence showing the victim to be a peaceful man.  (R. Vol. IV at 48).

Using state law, the KCA held the comments were not improper character evidence; rather, they were admissible to show the victim was argumentative but physically unable to fight. Consequently, the KCA found no basis for Petitioners' ineffective assistance of counsel claim.

The Court will not review the KCA's evidentiary determination that this testimony was not improper as it is not within the scope of a habeas action to review state court decisions for errors of state law.  *Estelle,* 502 U.S. at 67-68.  Because this evidence was admissible under state law, any objection to the testimony would have been denied; consequently, counsel was not constitutionally ineffective.  The KCA's decision was not an unreasonable application of federal law.

E.  Trial Preparation.

Petitioner claims his trial counsel was ineffective for failing to adequately prepare.

(1).  Inadequate time and inadequate preparation.

-14-

Petitioner argues his counsel did not spend enough time with him before trial and counsel did not prepare him for trial. Petitioner claims his counsel met with him four times for less than an hour; however, Sandifer provides no information about how his counsel failed to prepare him for trial.

The Court finds that these claims were appropriately denied as Petitioner cannot show prejudice. First, Petitioner provides no information about how more time spent with his attorney would have resulted in a different result at trial. Second, Petitioner provides no facts to describe how his counsel could have better prepared him for trial in such a way that would have resulted in an acquittal.

These two conclusory allegations with no factual support are insufficient to merit habeas relief. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Consequently, the KCA's denial of Petitioner's ineffective assistance arguments were not an unreasonable application of federal law.

(2). Failure to call witnesses.

Petitioner next argues his counsel was ineffective for failing to call two witnesses. Petitioner provides statements from Dorothy Collins and Debra Prather. (R. Vol. I at 35-36). Both statements make reference to the victim's violent nature when drinking and an incident in which the victim beat up Collins in 1994. (Id.). The KCA found Sandifer suffered no prejudice from his counsel's actions. The Court agrees.

First, there was evidence which showed the victim to be physically incapable of fighting. Consequently, the jury would have been free to believe this evidence instead of the statements from these two witnesses. Second, this information, while arguably more detailed, would have been

-15-

cumulative as the jury already had testimony that the victim would sometimes get physical with people. See *Griffin v. West,* 791 F.2d 1578, 1581 (10th Cir. 1986) (counsel not inadequate in failing to call witness whose testimony would have been cumulative).

Finally, Petitioner's own confession to police was overwhelming evidence of guilt and it was substantiated by the evidence. Petitioner did use the money he stole from the victim to buy and smoke crack. Furthermore, Petitioner suffered no bruises or other marks to support his self-defense claim. Petitioner was less than credible as his testimony at trial vastly differed from statements given previously to police. This evidence could not have been reasonably disbelieved by statements from Petitioner's two witnesses.

Looking at the totality of the evidence, the testimony from these two witnesses would not have resulted in an acquittal had they been called at trial. *Strickland,* 466 U.S. at 695-696. Petitioner cannot show prejudice from the failure to call these two witnesses; consequently, the KCA's denial of this claim was not an unreasonable application of federal law.

F.  Prosecutorial Misconduct.

Petitioner argues his counsel was ineffective for failing to object to two instances of prosecutorial misconduct.

"The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations omitted). "In considering whether the prosecutor's remark rendered the trial fundamentally unfair, this court considers the prosecutor's remark in context, considering the strength of the State's case and determining whether the prosecutor's challenged

-16-

remarks plausibly could have tipped the scales in favor of the prosecution." *Neill v. Gibson*, 278 F.3d 1044, 1061 (10th Cir. 2001).[5]

(1).  Petitioner first claims the prosecutor asked Petitioner to comment on the credibility of a witness and he used this in his closing arguments.  (R. Vol. V. at 189).  Petitioner argues he is entitled to relief because his counsel should have objected.  The KCA found this violated state law but Sandifer suffered no prejudice.  The Court agrees.

As the KCA noted, the prosecutor did not dwell on this statement.  He moved on to question Petitioner about changes in his recollection of what happened that night.  In the closing arguments, the prosecutor spoke about the credibility of the witnesses; however, he did not refer to Petitioner's earlier remarks on the detective's credibility.  The Court finds that such a comment did not render the trial fundamentally unfair.

Petitioner fails to show the trial would have had a different result had his counsel objected; consequently, there is neither prejudice nor ineffective assistance fo counsel.  The KCA's decision was not an objectively unreasonable application of federal law.

(2).  Petitioner next argues his counsel was ineffective for failing to object when the prosecutor accused Petitioner of lying in closing arguments.  The Court does not find the prosecutor's remarks to be improper.

Contrary to Petitioner's assertion, the prosecutor did not call Sandifer a liar.  The prosecutor discussed the jury's role in determining the weight and credit to be given the evidence.  (R. Vol. VI at 7).  During this discussion, the prosecutor discussed how a jury should determine credibility of witnesses when there are different versions of the facts.  (Id.).  He mentioned the jury should look

---

[5] The KCA used a similar analysis.

to the way a witness testifies to see if he is making it up as he goes along and the jury should analyze the motives of each witness.  (Id. at 7-8).  The prosecutor said detectives had no motive to lie but Petitioner did.  (Id. at 8).  This is not improper as a prosecutor can discuss a witness's motive to lie. See *Bland v. Simmons,* 459 F.3d 999, 1025 (10th Cir. 2006).  This remark was proper and did not affect Petitioner's right to a fair trial.  Because there was no impropriety, counsel was not ineffective for failing to object.  The KCA' denial of this claim was not an unreasonable application of federal law.

G.  Failure to raise a sufficiency of the evidence claim on direct appeal.

Petitioner next argues his counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal.

"Sufficiency of the evidence is a mixed question of law and fact."  *Maynard v. Boone*, --F.3d --, 2006 WL 3030553 at 6 (10th Cir. 2006).  "When reviewing the sufficiency of the evidence on a habeas corpus petition, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006 (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).[6]  The Court is "required to defer to any determination of factual issues by the state court due to the presumption of correctness afforded by § 2254(e)."  *Id.*

Petitioner has not rebutted the presumption that the factual issues decided at the state level are incorrect.  Applying the facts to the elements of the crime given in the jury instructions, the

---

[6] The KCA used a similar analysis.

Court finds the record supports the felony murder conviction.  (R. Vol. II at 82, 86).

Petitioner stated that he wanted the victim's money to buy crack.  The pathologist testified the victim's throat was cut around half of the circumference of the neck which was not consistent with the slashing motions described by Petitioner in his self-defense story.  Petitioner's stated in the interview with police that he reached in the front pocket of the victim to take his money and this was confirmed by police who testified that one of the front pockets was turned inside out.  This was consistent with Petitioner's admission of using the victim's money to buy and smoke crack after the murder.  The evidence was consistent with the prosecution's theory that Petitioner killed the victim to take his money to buy crack and it is sufficient to support the felony murder conviction.

Counsel is not required to raise every issue; rather, "[t]he weeding out of weak claims to be raised on appeal is the hallmark of effective advocacy, because every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court."  *Scott v. Mullin*, 303 F.3d 1222, 1230 n.4 (10th Cir. 2002).  "If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel."  *United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995) (internal quotations omitted).

There is sufficient evidence to support Petitioner's conviction; consequently, this is a meritless issue.  Petitioner's counsel is not ineffective for failing to raise this issue on appeal.  The KCA's denial of this claim was not an unreasonable application of Federal law.

## VI.  Cumulative Error.

Petitioner argues all of the mistakes made by his lawyer constitute cumulative error that

justifies habeas relief.

The Tenth Circuit has held "prejudice may be cumulated among different kinds of error, such as ineffective assistance of counsel and prosecutorial misconduct.  We further conclude that prejudice may be cumulated among such claims when those claims have been rejected individually for failure to satisfy a prejudice component incorporated in the substantive standard governing their constitutional assessment."  *Cargle v. Mullin*, 317 F.3d 1196, 1200 (10th Cir. 2003).  The standard to be used is whether the various errors identified collectively had substantial and injurious effect or influence in determining the jury's sentence.  *Id.* at 1224 (internal quotations omitted).

After collectively taking into account trial counsel's separate errors as discussed earlier, the Court finds they did not have a prejudicial effect on the jury's guilty verdict.  The KCA came to the same conclusion and this Court finds that decision to be a reasonable application of federal law.

### VII.  Police misconduct and Petitioner's defense.

Lastly, Petitioner argues the police prevented his wife from testifying by scaring her to move to Canada.  Petitioner attaches a statement from his wife which contains the following relevant remarks:

> -"What really hurts the most was the fact that the detectives told me there was nothing I could do, + [sic] I should go back to Canada that, John was gone for a long time."
> -"If I thought I could have helped, I would have stayed, but the detectives scared me."

(R. Vol. I at 48-49).

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."  *Washington v. Texas*, 388 U.S. 14, 19 (1967).

The evidence produced by Petitioner does not show that police denied him the right to present his wife as a witness in his defense.  Mrs. Sandifer's statements do not show coercion or any police action that prevented her from aiding her husband's defense.  Because these statements are insufficient to show a constitutional violation, Petitioner's claim fails.  The Court finds the KCA's denial of this claim was not an unreasonable application of federal law.

## VIII.  Evidentiary Hearing.

Petitioner also requests an evidentiary hearing.  The law limits the authority of the court to hold an evidentiary hearing upon Petitioner's application for relief:

> (2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The first question is whether Petitioner has "failed to develop the factual basis of a claim in State court."  *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).  If so, the Court must deny an evidentiary hearing unless Petitioner satisfies one of the two exceptions elucidated in section 2254(e)(2).  *Id*.  "If, on the other hand, the applicant has not failed to develop the facts in state court, [we] may proceed to consider whether a hearing is appropriate, or required under [pre-AEDPA] standards."  *Id.*

The record shows Petitioner requested an evidentiary hearing during the state collateral proceeding but the trial court denied the request.  (R., Vol. I at 23, 60); *Sandifer*, 2004 WL 944021 at 1 .  Where the habeas applicant has sought to develop the factual basis underlying his petition, but a state court has prevented him from doing so, section 2254(e)(2) does not apply.[7]  *Miller,* 161 F.3d at 1253.  Consequently, Petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Id.*

Because Petitioner's allegations do not entitle him to relief, the Court denies his request for an evidentiary hearing.  The Court also denies Petitioner's request for the appointment of counsel. See Rule 8 (c), Rules Governing Section 2254 Cases in the United States District Courts.


Petitioner's motion for relief under 28 U.S.C. § 2254 (Doc. 1), request for an evidentiary hearing, request for counsel, and Certificate of Appealability under 28 U.S.C. § 2253 are hereby DENIED.

SO ORDERED this  9th   day of November, 2006.

 s/ Wesley E. Brown

Wesley E. Brown, Senior U.S. District Judge

---

[7] Petitioner did not develop the record for his procedurally defaulted dubbed tapes and due process claim; consequently, section 2254(e)(2) applies for this claim.  Petitioner has failed to show an evidentiary hearing is warranted under this provision.